
Marian F. Harrison
US Bankruptcy Judge

Dated: 11/30/10

# IN THE UNITED STATES BANKRUPTCY COURT FOR
# THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| BARRY NEIL SHRUM, | ) | CASE NO. 309-06329 |
| | ) | CHAPTER 11 |
| Debtor. | ) | JUDGE HARRISON |
| | ) | |
| DAVID TYREE, TIMOTHY M. | ) | |
| CARTER, WALTER W. FUCHS, | ) | ADV. NO. 309-0259A |
| BONNIE FUCHS, AND | ) | |
| RAM IV PARTNERS, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BARRY NEIL SHRUM, | ) | |
| WACHOVIA BANK, N.A., | ) | |
| AND CIVIC BANK & TRUST,[1] | ) | |
| | ) | |
| Defendants. | ) | |

___

## MEMORANDUM OPINION
___

This matter is before the Court upon the parties' cross-motions for summary judgment. The plaintiffs seek summary judgment on their claims for breach of fiduciary duty

---

[1]The plaintiffs and Wachovia Bank entered a stipulation of dismissal on October 23, 2009, and the Court granted Civic Bank's motion for summary judgment on July 16, 2010.

and breach of contract, the debtor's affirmative defenses, and the amount of damages with pre-judgment interest. The debtor seeks summary judgment on all of the plaintiffs' claims and on the plaintiffs' request for punitive damages.

For the reasons discussed below, the Court finds that the debtor's motion for summary judgment should be granted in part and that the plaintiffs' motion should be denied.

## I. BACKGROUND

Unless indicated otherwise, the following facts are undisputed. The debtor is an attorney, and Global Development Construction, Inc. (hereinafter "Global"), was his client. David Tyree, Timothy M. Carter, Walter W. Fuchs, and Bonnie Fuchs (hereinafter "Original Plaintiffs") signed reservation agreements with Global for the purchase of property in Costa Rica. Upon signing the agreements, the Original Plaintiffs each wired $125,000 into the debtor's trust account. None of the Original Plaintiffs had any contact with the debtor regarding the purchase of the Costa Rica property. Instead, each plaintiff signed a reservation agreement with Global based on information provided to them by their friend, Richard Mahler. Mr. Mahler had worked out an agreement with Global, through its principal, David Ruiz, whereby he was supposed to receive payment for buyers he procured for the project. There was also some discussion about Mr. Mahler receiving a free lot in the Costa Rica development when it was believed that Edward Burnham would purchase the development.

The debtor reviewed a reservation agreement for Global. The draft reservation agreement in the debtor's files reflects the language that "[t]he funds will be held in escrow by Global Construction's attorney until the closing as set forth in paragraph 9." In his deposition, the debtor admitted that his client told him funds were being transferred to his trust account in connection with the reservation agreement, and the debtor provided the information necessary for funds to be wired into this account.

The debtor confirms that he had no contact with the Original Plaintiffs, and he asserts that he believed the transfers totaling $375,000 were wired to his trust account from Mr. Burnham, who was supposed to buy the Costa Rica development. The debtor's escrow account did not reflect where the wired funds came from until he received his written bank statement. At that point, the debtor had already transferred the funds to Global, per Mr. Ruiz's instructions.

The Original Plaintiffs had five days to rescind their reservation agreements, and none exercised that right. After the rescission period had passed, Global requested that the debtor release the $375,000 and deliver it to Global. The debtor made two wire transfers to Global's Wachovia account. The first was $250,000 and the second was $125,000. It is disputed whether the debtor agreed to serve as escrow agent for the transactions, and there is a dispute about whether Mr. Mahler was informed when the funds were transferred and

whether Jack Stern, Mr. Mahler's attorney, discussed these reservation agreements, and later, the transfer of funds, with the debtor.

A year later, Mr. Mahler formed Ram IV Partners, LLC (hereinafter "Ram IV"), which is in the business of investment consulting. A year after Ram IV was formed, Mr. Mahler caused Ram IV to pay each of the Original Plaintiffs their $125,000 investment plus interest pursuant to a subrogation/indemnification agreement, dated June 12, 2009. Each of the Original Plaintiffs filed a proof of claim in this bankruptcy case and filed this adversary after Ram IV had already reimbursed their original investment plus interest. When this fact was discovered by the debtor, the Original Plaintiffs sought to join Ram IV as an additional plaintiff. That request was granted on May 25, 2010.

## II. SUMMARY JUDGMENT STANDARDS

Federal Rule of Civil Procedure 56(c)(2), as incorporated by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." ***Anderson v. Liberty Lobby, Inc.,*** 477 U.S. 242, 248 (1986). In order to prevail on a motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an

4 – U.S. Bankruptcy Court for the M.D. Tenn.

essential element of the opposing party's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. DISCUSSION

### A. SUBROGATION

The debtor asserts that Ram IV has no claims against him because Ram IV is not a subrogee under Tennessee law. The plaintiffs assert that Ram IV does have standing as a subrogee based on its contract with the Original Plaintiffs assigning this debt. Both sides argue that the subrogation issue can be decided as a matter of law.

Subrogation is "the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt." *Castleman Constr. Co. v. Pennington*, 432 S.W.2d 669, 674 (Tenn. 1968) (citation omitted). Legal or equitable subrogation is based upon basic principles of equity and justice and allows a person who pays the debt of another to assume the creditor's place with respect to the debt. *Id.*

5 – U.S. Bankruptcy Court for the M.D. Tenn.

"[I]n the absence of legal compulsion to pay the debt of another, voluntary payment of another's debt, absent fraud, accident, mistake, or by contract with the payee, does not entitle one to subrogation." **Hubble v. Dyer Nursing Home**, 188 S.W.3d 525, 538 (Tenn. 2006) (citation omitted). A mere volunteer or stranger is not entitled to subrogation where he pays without an assignment of the debt or an agreement for subrogation. *Id.* A "volunteer" or "stranger" is "one who has no obligation or liability to pay the debt and has no interest in the property affected by the debt. Some compulsion to pay, such as legal process, is ordinarily essential and sufficient to support subrogation." *Id*. A party is considered a volunteer unless it makes a payment because of a judicial decision, a contractual duty, or some other legally enforceable means. *Id.*

In the present case, Ram IV had a contract with the payees. Specifically, the June 12, 2009, agreement provided that Ram IV agreed to indemnify and hold the Original Plaintiffs harmless from any and all losses related to the reservation agreements. In return, the Original Plaintiffs agreed to grant Ram IV the right of subrogation to the extent of any amounts recovered. As explained in **Harrison v. Harrison,** 149 Tenn. 601, 259 S.W. 906 (Tenn. 1924), the distinction between a volunteer and a subrogee is whether the one who pays the debt intends to extinguish the debt rather than keep it alive. *Id.* at 908 (citation omitted). Like in **Harrison**, the facts of this case show that "there was not only no intention of extinguishing the debt, but a contract with the payee is set up." *Id.* Accordingly, Ram IV

meets the legal definition of a subrogee. This, however, does not end the discussion. The reservation agreements expressly prohibited the assignment of the Original Plaintiffs' rights under the agreement. *See Preferred Priority Reservation Agreement,* ¶ 12. Accordingly, any contractual rights the Original Plaintiffs may have had against the debtor could not be assigned to Ram IV. The same is not true with the tort claims.

Based on these undisputed facts, the Court finds that Ram IV's only subrogation rights relate to any tort recovery against the debtor.

### B. NON-TORT THEORIES

The debtor asserts that the Original Plaintiffs cannot be creditors in this case because their claims were fully satisfied before they filed their proofs of claim and before they filed this adversary complaint. The Original Plaintiffs assert that the collateral source rule allows full recovery from the debtor regardless of whether they received payment from another source.

The Court finds, as a matter of law, that the collateral source rule does not apply to their claims for breach of contract and breach of fiduciary duty. Therefore, on these claims, the Original Plaintiffs are barred from seeking further payment from the debtor through this

bankruptcy proceeding. The same is not true for the tort claims, which will be discussed below.

In Tennessee, the collateral source rule, which prevents a tortfeasor from reducing his damages payable by amounts the plaintiff has received from sources other than the tortfeasor, has no application in contractual, quasi-contractual, or equitable contract-like claims. *Safeco Ins. Co. of Am. v. City of White House, Tenn.,* 191 F.3d 675, 693 (6th Cir. 1999) (citation omitted). *See also Engstrom v. Mayfield,* No. 03-5234, 2006 WL 2456948, at *5 (6th Cir. 2006) (collateral source rule "has no application in contractual or quasi-contractual claims") (citations omitted). The general principle for assessment of damages for breach of contract is that a plaintiff is entitled to be placed in the same position he or she would have been if the contract had been performed. *Hawkins v. Reynolds,* 467 S.W.2d 791, 795-96 (Tenn. Ct. App. 1971) (citation omitted). It is also well settled that the injured party is not to be put in a better position by recovery of damages for breach of contract than he would have been in if the contract had been fully performed. *Great Am. Music Mach., Inc. v. Mid-South Record Pressing Co.*, 393 F. Supp. 877, 885 (M.D. Tenn. 1975); *Grantham and Mann, Inc. v. Am. Safety Prod., Inc.,* 831 F.2d 596, 601 (6th Cir. 1987).

Under Tennessee law, the collateral source rule does not apply to the Original Plaintiffs' breach of contract claim or their breach of fiduciary duty, which is an equitable contract-like claim. *See Engstrom v. Mayfield,* No. 03-5234, 2006 WL 2456948, at *5. In

turn, to the extent the Original Plaintiffs' proofs of claim are based on breach of contract or fiduciary duty, such claims must be denied. *See* 11 U.S.C. §§ 101(5) and (10).

### C. TORT CLAIMS

As discussed above, the collateral source rule applies to claims sounding in tort, and therefore, damages payable are not reduced by amounts the Original Plaintiffs have received from other sources. ***Safeco Ins. Co. of Am. v. City of White House, Tenn.,*** 191 F.3d 675, 693. Here, the Original Plaintiffs raise state law claims sounding in tort, specifically negligence and negligent misrepresentation. The debtor argues that there is no factual basis for these claims. The Court finds that there are material facts in dispute and that these claims must be tried.

"A negligence claim requires proof of the following familiar elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause." ***Hale v. Ostrow,*** 166 S.W.3d 713, 716 (Tenn. 2005) (citation omitted).

Negligent misrepresentation requires a plaintiff to prove the following elements:

(1) the defendant is acting in the course of his business, profession or employment, or in a transaction in which he has a pecuniary (as opposed to gratuitous) interest; and

(2) the defendant supplies faulty information meant to guide others in their business transaction; and

(3) the defendant fails to exercise reasonable care in obtaining or communicating the information; and

(4) the plaintiff justifiably relies upon the information.

***Ritter v. Custom Chemicides, Inc.,*** 912 S.W.2d 128, 130 (Tenn. 1995) (citation omitted). The false information supplied must "consist of a statement of a material past or present fact." ***McElroy v. Boise Cascade Corp.,*** 632 S.W.2d 127, 130 (Tenn. Ct. App. 1982) (citations omitted). Statements of conjecture or representations concerning future events cannot form the basis for a claim of negligent misrepresentation. ***Id.***

The record shows that the debtor reviewed a reservation agreement for Global. The draft reservation agreement in the debtor's files reflects the language that "[t]he funds will be held in escrow by Global Construction's attorney until the closing as set forth in paragraph 9." In his deposition, the debtor admitted that his client told him funds were being transferred to his trust account in connection with the reservation agreement, and the debtor provided the information necessary for funds to be wired into this account. The debtor then released the funds to Global based on Mr. Ruiz's verbal request because Mr. Ruiz told him the five-day rescission period had passed. It is disputed whether the debtor agreed to serve

Case 3:09-ap-00259    Doc 111    Filed 12/01/10    Entered 12/01/10 14:19:39    Desc Main
Document      Page 10 of 14

as escrow agent for the transactions, and there is some dispute about conversations he may have had with Mr. Stern, who represented Mr. Mahler. If the Original Plaintiffs can show that the debtor was acting as the escrow agent, then the debtor may have owed them a duty of care and his conduct may have been unreasonable. The Original Plaintiffs will also have to tackle the hurtle of reliance and causation since all admitted that they never met with nor spoke with the debtor in signing these reservation agreements and that the debtor did not influence their decision to sign.

### D. PUNITIVE DAMAGES

The plaintiffs seek punitive damages against the debtor, asserting that he acted recklessly by releasing the funds held in his trust account. The debtor asserts that he released the funds at the request of his client, Global. Obviously, any determination of punitive damages must await trial of the remaining counts.

### E. DISCHARGEABILITY UNDER § 523(a)(2)(A)

The debtor asserts, as a matter of law, that the plaintiffs cannot prove the elements of 11 U.S.C. § 523(a)(2)(A). The Court agrees.

Pursuant to 11 U.S.C. § 523(a)(2)(A), a debt is non-dischargeable if the debt is:

for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –

11 – U.S. Bankruptcy Court for the M.D. Tenn.

> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

A creditor must prove the following elements in order to except a debt from discharge pursuant to 11 U.S.C. § 523(a)(2)(A):

> (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of the loss.

***Rembert v. AT&T Universal Card Serv. (In re Rembert),*** 141 F.3d 277, 280-81 (6th Cir. 1998) (citation omitted).

The plaintiffs, by their own admission, negate this claim. In their Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, the plaintiffs state: "[t]he plaintiffs want to make it clear to the Court that they do not want to allege or pursue any intentional, malicious, or fraudulent conduct against Mr. Shrum under any theory, as this could potentially negate Mr. Shrum's insurance coverage." Because 11 U.S.C. § 523(a)(2)(A) requires a showing of intent to deceive, the Court finds that the plaintiffs have withdrawn this claim.[2]

---

[2] In their complaint, the plaintiffs also raise a non-dischargeability claim under 11 U.S.C. § 523(a)(4). None of the parties are seeking summary judgment on this issue.

## F. AFFIRMATIVE DEFENSES[3]

The plaintiffs seek summary judgment on the debtor's affirmative defenses, and in his response, the debtor seeks summary judgment on these affirmative defenses as well. To the extent the debtor's affirmative defenses relate to the plaintiffs' breach of contract or fiduciary duty claims, these defenses are moot because the Court has already found that, as a matter of law, the plaintiffs do not have claims for breach of contract or fiduciary duty.

Regarding those affirmative defenses that relate to the negligence claims, the Court finds that there are material facts in dispute that must be litigated.

Finally, any argument regarding the statute of limitations for asserting attorney malpractice is irrelevant as the plaintiffs have indicated that they are not asserting such a claim.

## IV. CONCLUSION

Based on the discussion above, the Court grants summary judgment to the debtor on the Original Plaintiffs and Ram IV's breach of contract and breach of fiduciary duty claims. Accordingly, any affirmative defenses related to these claims are moot. On the state law

---

[3]Earlier in this opinion, the Court dealt with the debtor's affirmative defenses regarding subrogation and the collateral source rule.

negligence claims, including the debtor's related affirmative defenses, and any resulting damages, the Court denies summary judgment.

An appropriate order will enter.

**This Memorandum Opinion was signed and entered electronically as indicated at the top of the first page**

This Order has Been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.